your willingness to accept the appointment in this case. Our final case of the morning is Bostic v. Vasquez. Mr. Blatter. He pleads the court. David Gladysh on behalf of Lorena Bostic. Excuse my voice. Her background in the case. This was the grant of a summary judgment for Jan Parsons and Clarence Murray. The case centers around Ms. Bostic being on probation and her probation officer raping her while in the Lake County government complex after a probation revocation hearing. In this case, the district court held that it does not definitively decide whether Parsons and or Murray violated Bostic's constitutional rights. The court ultimately resolves the summary judgment motion under the second prong of qualified immunity test that asks whether clearly established law in 2013 would have put reasonable officials in Parsons and Judge Murray's positions on notice that their conduct violated Bostic's constitutional rights. Mr. Gladysh, you might want to head back and get a cup of water. You didn't bring the cup up, would you? I don't want to get in trouble with the court. That is better. Thank you, Your Honor. So in this instance, I'm going to focus on the qualified immunity, but I'm also going to talk about this is the classic example of supervisors deliberately looking away for fear of what they might see in this instance. What's really important in this case is that this probation officer, a male probation officer, was accused approximately a year and a half prior to the incident of sexually assaulting another female probationer inside the stairwell at the Lake County Government Center. Why is that important? That person came forward, reported it, and there was a Chief Probation Officer. Clarence Murray was the chief judge in charge of the probation department. After that meeting with, her name is A.R., according to what we're putting here, it was decided that a rule would be put in place, and that rule was put in place for the safety of the female probationers that Miroslav would not be discussed by the district court opposing counsel in this case. There is no other case anybody's confined or a safety rule is specifically put in place to protect. I don't understand how you can recover under federal law for the violation of a local rule. Do you have any authority for that proposition? A local rule? Yes. The local units of government adopt what you call a safety rule, and you're seeking to recover under federal law for a violation of that rule. Do you have any authority for that? No, because I'm not saying that that's the basis of why I'm allowed to make a recovery. That goes to the knowledge of Jan Parsons and the knowledge of Clarence Murray that they When economics got involved, they were short-staffed, and they decided to send two or three female probationers back to him. So, I'm not saying that I'm able to recover because of the rule. I'm able to recover because of the knowledge that shows that by their actions, they knew he presented a danger. That's the key point. And what do you have to say about Hess against Garcia? That's a case I saw that you were a panel member on. It doesn't make any difference who is on the panel. The question is, how is that line reconcilable with Hess where it was agreed that people had complained to the chief of police before about the particular officer involved in the ride-along in Hess? And we said that was not a basis of liability. I saw that, Your Honor, and I actually outlined in detail the distinctions between Hess and our current case. The biggest distinctions are as follows. Number one, the complaint was from a fellow officer who gave that opinion. None of the girls involved in the ride-alongs made that complaint. Number two, the judge, the chief of the department, Dodi, for the Hammond Police Department, was criticized in that opinion for not implementing a rule. So he said, well, he didn't put this rule in place. He didn't investigate it. Therefore, there can't be a liability. I'm saying here, we had actually somebody who was sexually assaulted by Miroslav come forward, report it, put them on notice. Then a rule was put in place showing their knowledge they presented a danger. However, they wouldn't allow female probationers to be assigned to him for an extended period of time, and only when the economics of being shorthanded did they assign the female probationers back to him. So it was economics, knowing that there was a danger presented by this probation officer. As a former probation officer myself, there is no rule where males see males, females see females. You are a licensed probation officer, and you see everyone. When you have a separation... So the underlying violation, we need to move on for time. So we're looking at a substantive due process violation, not a Fourth Amendment violation. Correct. Under the substantive due process of bodily integrity, spell out for me how the supervisors had a total unconcern for Bostic's well-being. Well, because they chose economics over safety. They knew that he was dangerous because they put the rule in place. They knew it. You can't look at someone's conduct. Why do you put rules in place? You put rules in place and you put laws in place because you want to protect people from harmful conduct. This is just another argument for enforcing the rule in the name of federal law. Yeah, I disagree, Your Honor, because... It's been established pretty well that you can't do that. But in this instance, it goes to the knowledge. I think you have to look into the knowledge of the individual. That's what the case law says when we look at this. We're looking to see, did they turn a blind eye? Let us look at something like Vance against Rumsfeld. Secretary of Defense Rumsfeld issues an edict forbidding contractual officers, those contracting with the military, from engaging in certain tactics. He issues that rule because he knows that some people are tempted to do that. And some of them do it notwithstanding the rule. And the secretary gets sued personally. We held on bond that you can't sue the secretary personally, even though he and everybody else in the Department of Defense knew that some people would engage in misbehavior. Why is this any different from that? Because in this instance, what they did is they put the rule in place, then they withdrew the rule knowing the danger was still present. That's the difference. Secretary Rumsfeld had the rule in force throughout his tenure as a secretary. So he knew the danger was present. We held that wasn't sufficient. But they reversed their own rule to make it so their economics were protected at the danger of the probationer. I think that that goes to the knowledge. Because you have to show that they intended for the harm to occur. You've got to show this mental aspect of it. Is it that they intended the harm to occur to women and generally to female probationers? Or do we have to show that they intended for the harm to happen to Ms. Bostic? I think it can be to both. I think to female probationers because the rule was put in place to protect them, and they only issued two or three female probationers to him after that rule was put in place because they were short-staffed. And then for Ms. Bostic, they knew when they assigned her that she was being exposed to that. And what's really important is that Miroslav, during this time period, also had requested a probationer with mental health issues be assigned to him, and she refused because she knew he was dangerous to her. And that's in the briefings as well. So this is not just one incident. I think I have to show the knowledge that Jan Parsons had and that Clarence Murray had for that department and controlling that department and the knowledge of that danger. How has this not been a vicarious liability argument? Well, I'm saying they were the immediate supervisors for him, so they've got that obligation to protect her from them when they know that danger is present. But is vicarious liability permitted? No. It's because we're only attempting to sue based upon their own actions, like in Grindle, saying that in this instance it's a situation. So I think that's why I'm trying to drill down for me which – that they had to have knowledge of, or is it to Ms. Bostic? I'm just trying to pin that down. Well, and this is to Ms. Bostic because she's the only one. While there's two female probationers that were sexually assaulted by the same individual, about a year and a half to two years apart is the time period. No one knew exactly. There's some guesstimates in the statement of facts here, but no specific dates. We know the date of the rape, and we know the date of the – I'm sorry, I'm not answering my question clearly. The supervisors had to have knowledge. You keep using the word knowledge. Yes. Deliberate indifference? What type of knowledge and to whom? Parsons and Murray knew that he presented the danger. They put that rule in place. Then they assigned her to him to supervise, and she's already being supervised by a female probation officer without any problems. And then, because they were short-staffed, he then began to groom her, and the assaults and molestations and so forth occurred over a period of time, ultimately resulting in the rape after verification hearing, where he was able to control her conduct, put her in a building, put her in a stairway, and then force himself on her. So I'll reserve the rest of my time. Your time has expired, counsel. Thank you. Ms. Doran. Thank you, Your Honors. May it please the Court. On the question of what Appellant's counsel is referring to as the safety rule regarding Ratajkowski and the supervision of new female probation officers, Judge Easterbrook is correct that appellants cannot sue to enforce compliance of this local action under federal law. I would also note that Judge Murray and Parsons imposed this rule out of an abundance of caution so that they could observe Ratajkowski and his conduct over a period of time to determine whether any further incidents would occur. And that ties into the central issue in this case, is that under Section 1983, as you identified, Judge Pryor, officials may be held liable only for their own misconduct. To establish supervisory liability, Bostick must show that Judge Murray and Parsons wanted Ratajkowski's unconstitutional conduct toward Ms. Bostick to occur, and that she must present evidence that they knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye. Finally, Bostick has failed to show any evidence that Judge Murray or Parsons even knew about Ratajkowski's misconduct, much less participated, approved, or wanted it to happen. The district court correctly granted summary judgment to Judge Murray and Parsons on these grounds. What do we do about this kind of second theory of liability, supervisory liability, that they created this environment that would have allowed this conduct to occur against Ms. Bostick? Your Honor, are you referring to the deliberate indifference theory? Yes. So deliberate indifference here would require us showing approaching total unconcern in the face of a serious risk, and the facts also do not establish this theory. The prior allegation against Ratajkowski involving probation or AR, this allegation was disputed, and Judge Murray and Parsons were not able to identify further evidence supporting it. Nonetheless, they did not ignore this allegation. They investigated thoroughly in an attempt to determine evidence that would be available, and they reminded their probation officers, including Ratajkowski, not to take probationers into secluded areas in the building. They also reassigned AR as she had requested. And Bostick was assigned to Ratajkowski only after his work with female probationers had been observed for over a year and no incident had occurred. So we do not have a situation in which Judge Murray and Parsons are disregarding a serious risk. They are taking actions that are consonant with trying to protect the probationers here. Judge Murray and Parsons are also protected by qualified immunity. Qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established rights of which a reasonable person would have known. Any precedent must show that the official's particular conduct was clearly established in 2013. No case shows this. If we look at the specific conduct of Judge Murray and Parsons in assigning a probation officer a female probationer when there was only a single unverified prior allegation of inappropriate conduct, the cases that we do have, such as Hess and Valentine, deny liability in similar circumstances. And unless the court has any further questions, which I would be happy to answer, we would recommend that the court affirm the judgment. Thank you very much, counsel. The case is taken under advisement, and the court will be in recess.